Okay, the first case on today's docket is the case of in re Charles B. versus the people of the state of Illinois. We have Penelope Smith for the appellant and Sharon Shanahan for the appellate. So you may proceed. Good morning. Good morning. I'm Penelope Smith and I work for the Illinois Guardianship and Advocacy Commission. And I am court appointed counsel for the appellant respondent in this cause, Charles B. This action was for a recommitment of Charles B. He had previously been found subject to involuntary admission and a prior order had been entered. I believe that the record reflects that there may have even been prior commitments before the order that just preceded this action today. The state claimed that Charles B. met the criteria for involuntary admission on all three bases under the Mental Health and Developmental Disabilities Code Section 5-1-119. And those three bases are a person with a mental illness and because of the mental illness they're reasonably expected to engage in conduct placing that person or another in physical harm or reasonable expectation of being harmed. Also, the second way a person can be found subject to involuntary admission is, of course, a person with a mental illness. And because of their mental illness, they're unable to provide for their basic physical needs so as to guard themselves from serious harm without the assistance of others. And all of these are unless treated on an inpatient basis. And then the third basis upon which a person can be found subject to involuntary admission is a relatively new prong. And that deals with someone who refuses treatment or is not adequately adhering to treatment. And basically they're alleged that if they aren't treated on an inpatient basis, they will become a person who meets the standard under number one or number two, which is what I refer to as harm and inability to provide for basic physical needs. So he was alleged, Charles B. was alleged to meet the standard for involuntary admission on all three of those bases. And at the end of the proceedings, the trial court stated the burden of proof has been met, there is a mental illness, and the factors are met pursuant to the statute. And that was the full extent of the trial court's findings of fact. 3-816 of the Mental Health Code requires that every final order that is entered in an involuntary commitment or involuntary medication case be in writing and shall be accompanied by a statement on the record of the court's findings of fact and conclusions of law. Charles B. is arguing to this court today that the trial court violated 3-816 of the Mental Health Code when it failed to make a finding as to how Charles B. qualified as a person subject to involuntary admission. This case is technically moved. However, there are three well-recognized exceptions to the mootness doctrine. In my brief, I argued that one of those definitely applies to the facts of this case, and that exception is the capable of repetition yet avoiding review exception to the mootness doctrine. The order in this case was for 90 days, and I think that this court would agree that 90 days is too short of a duration to see this action fully completed to its end. So persons would not be able to even bring these matters to this court if there wasn't an exception to the mootness doctrine. So I think that it fits the first criteria of the capable of repetition yet avoiding review exception to the mootness doctrine. And then the second criteria I believe is also met here, and that is that there is a reasonable expectation that Charles B. would again be subject to the same action. He, as I indicated in my beginning address to this court, this was a recommitment, and he had been committed even before that. So he has a long history of mental illness, and so I think it's a reasonable expectation that he would again be subjected to involuntary remission. So it's my argument to the court today that the capable of repetition yet avoiding review exception to the mootness doctrine applies in this case. I believe that it would be possible to also find that the public interest exception applies, but I did not argue that in my brief. I think this court has recognized that exception in Lance H., and I think that's another way that it could be found to be subject to being decided by this court today, despite the fact that it is moot. This case is very similar to this court's case in Ray James S., and in that particular case, the trial court found that the respondent was a person subject to the involuntary administration of psychotropic medications. That was the finding. The court did not indicate whether that was by way of deterioration of ability to function or suffering or threatening behavior, and this court reversed that order just for that very reason, because the court's findings did not contain any specific findings of fact. We did not know, based upon looking at the findings of fact in the James S. case, how the trial court found that James S. was a person who qualified for the involuntary administration of psychotropic medication. Didn't the trial court here state on his findings that there is a mental illness and factors are met pursuant to the statute? I mean, the statute doesn't require specifics in the findings of fact, and in James S., those were totally omitted, but here the judge at least made some statements about what he thought was the reason for the commitment. Your Honor, he did say that there was a mental illness. Right. He did say that. He did say that the burden of proof was met. So he made those two statements or those two findings, if you will. However, I think that the Charles B. case is very similar to the James S. case, because when the trial court in this case, in the Charles B. case, indicated that the person that Charles B. is subject to involuntary admission according to the statute, again, we're left with the same void, the same blank area. We don't know what did the court find. Did the court find that he was reasonably expected to harm himself, reasonably expected to harm someone else, that he was unable to take care of his basic physical needs, or that he was refusing treatment or not adequately adhering to treatment? So I think it's very similar to the James S. case, and I think that the James S. case is the way that 3-816 should be interpreted, that we need to walk away and know specifically what the court found. I think I love how we're doing these cases. I would have findings of fact that I'd propose to the court and say, Your Honor, this is what we believe, and if you accept that, fine. If not, maybe you could adjust it. Then we wouldn't be here. Yes, Your Honor, that's true. Are you in a checklist? Yes. Yes, I think that would be a good idea. However, in this case, Charles B. was pro se. Yes. Our agency, Legal Advocacy Service of the Illinois Guardianship and Advocacy Commission, was appointed to represent him in the trial court. However, Mr. B. rejected our services and chose to represent himself. So that added that the court should show some leniency or not hold a pro se litigant to the exact standards that you would hold an attorney to. So Mr. B., of course, didn't think that he met the standard under any of the three bases. However, I guess the State's Attorney's Office, who represents these cases as the petitioner, I think that the State's Attorney's Office could, in fact, do what Your Honors are suggesting this morning of having a checklist, something like that. There was also another case that I think is fairly similar to this case, and that was In Re. Joseph M. And in that case, this court also reversed the trial court's order for failure to comply with 3-H16. This court found that the trial court never expressly made any factual findings related to whether Joseph met the statutory criteria for involuntary admission. I think that the court had to find, the trial court, this court found that the trial court had to find, for example, that Joseph would pose a danger to himself or others if not involuntarily hospitalized. And instead, the trial court made some vague findings about he would be a danger to someone else if he didn't take his medication or something along those lines. So I think that, again, that decision supports Charles B.'s argument to this court today that the portion of the order that found him to be a person subject to involuntary admission should be reversed for the failure to comply strictly with 3-H16 of the Mental Health Code. And the state has cited some cases to try to dissuade this court from finding for Charles B., and I believe those three cases are In Re. Long, In Re. Grimes, and In Re. Evans. Actually, if this court looks at those cases, those cases actually support a finding for Charles B. in this portion of the case because the findings in those cases were specific. They were either that the person was mentally ill and unable to provide for his basic physical needs or mentally ill and reasonably expected to inflict serious physical harm upon himself or another in the near future. Now, the standard for involuntary admission has changed since those cases were decided. However, a person can just look at the findings of the trial court and know specifically what did the trial court find that the state proved by clear and convincing evidence, that the person was either a harm to himself or others or couldn't provide for his basic physical needs. And that's exactly what we need in this case and what is missing in this case. So I respectfully request that this portion of the case be reversed and that this court find that Charles B., that the findings of the trial court, I apologize, were not sufficient to meet the requirements of 3-816 in conjunction with the other cases that this court has decided under that particular statute of the Mental Health Code. There's a second issue in this case, and that is Charles B. was also subjected or was alleged to be subjected to involuntary administration of psychotropic medication. And three different medications were requested. The state's expert was a person, a doctor by the name of Dr. Tracy. She was a psychiatrist. I think she was, in fact, the chief psychiatrist for Shope Mental Health and Developmental Center. She testified that another doctor, who really served as the treating doctor for Charles B., had actually executed the petition and that she had actually, the other doctor, had actually instructed Charles B. and given him written information on the benefits and the side effects of the three medications, psychotropic medications, that were sought to be administered. No one presented any evidence at all that Charles B. was advised in writing, as required by 2-102 of the Mental Health Code, that there were, as to the alternatives for the proposed treatment. That is a requirement in addition to the informing the respondent of the benefits and the side effects. And, in fact, there's been one case that has found, that was decided only on that basis. And the case involved a person who was alleged to be subject to the involuntary administration of psychotropic medications and was advised in writing of the benefits and side effects of the medication, but none of the alternatives, and that's the Nicholas L. case. What if there are no alternatives? What are you supposed to provide? Your Honor, I believe that there are always alternatives, and I think that you can look at the testimony of Dr. Tracy in this case when she was asked about whether there were less restrictive alternatives other than medication, and she said that they had been looked at and those had been deemed to be inappropriate. So what the State is trying to get us to do, Your Honor, is to read something into the 2-102 statute that doesn't exist, namely that they must only be advised if there are viable alternatives to the administration of psychotropic medications. And I would state to this Court that decisions by this Court have held that there must be a strict construction of 2-102 and that if we start eroding that process, Your Honor, those are in place to protect due process rights according to this Court's decision in In Re, John R. And if we start eroding those, then pretty soon we're going to find exceptions to why a patient doesn't have to be advised in writing as to the benefits or as to the side effects. But what you're suggesting is that the psychiatrist or psychologist is required to state unviable alternatives? And a lot of viable alternatives are viable treatment options and risks, but what you're suggesting is that they're required to recommend or state unviable treatment? Well, I mean, it could in fact come to that if a psychiatrist has gone through basically a laundry list of other proposed treatment alternatives. Those would be vast. Part of them are listed in 1-128 of the Mental Health Code. That includes counseling. That includes outpatient treatment, partial hospitalization. There are many others. Also, ECT would always be an alternative. What's ECT? I'm sorry. Electroconvulsive therapy. Thank you. Yes, and that is provided for under 2-107.1 also. It can be in action for involuntary administration of ECT or involuntary administration of psychotropic medications. So at the minimum they should go through the listed alternative treatments? Yes, and there's no requirement that the psychiatrist advise the respondent of which ones are viable. Just here are the alternatives to this proposed treatment. Now, if the respondent then chose to engage with the psychiatrist and asked about the alternative treatments, then the psychiatrist could at that point tell the respondent that I don't think that this would work or we've tried this, something along those lines. But I don't think in any event that there is evidence in this case that there were no viable alternatives because Dr. Tracy testified that there were less restrictive alternatives, which may include counseling and outpatient treatment and things of that nature. However, I believe that there would be a good faith argument to make that ECT is probably more restrictive than psychotropic medication. So something like that could be listed in that also. So they're not equal to each other. Less restrictive alternatives and other treatment alternatives are not mutually exclusive. And the paperwork that Charles B. refused didn't contain anything about alternatives, just what the medications were? Well, Your Honor- Because he did refuse the paperwork, right? Yes, there was nothing in the record as to alternatives at all. So there was no evidence presented. I mean, even if there was a list of alternatives that that had been given to Charles B., still the petition or its attachments are not evidence, so those would have to be admitted into evidence to prove that, in fact, he had been advised of alternatives. But I looked at the record, Your Honor, and I did not find any reference to any type of alternatives. It was never brought up in the testimony at all. And even when the respondent brought it up himself and said, I was supposed to be advised of alternatives or something like that, I think it's at the record of page 91, that still didn't trigger the state's attorney to realize that he had to prove by clear and convincing evidence that Charles B. had been advised in writing of not only the benefits and the side effects but of the alternatives to the proposed treatment. Thank you, Ms. Smith. You'll have the opportunity for rebuttal. Ms. Shanahan? May it please the Court, Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. This case was briefed by Ms. Neha Sharma before her decision to move to the Cook County State's Attorney's Office, so I'll be arguing on her behalf. I have handled quite a few of these mental health cases as this Court, and I'm sure Ms. Smith can't eclipse us all. But the thing that struck me most about this case is what a good job they did presenting evidence. I've had cases where the doctor that is testifying is asked, did you advise the respondent of the benefits and side effects of the medicine? And the doctor says, well, actually, I've never met the guy. My colleague so-and-so sees him, but I'm sure he did because he always does. I mean, boy, that needs to go back. And I've said this before. Yesterday when I was in here arguing about a criminal defendant, I am a zealous advocate for the state, and that's my opponent. In these mental health cases, we're all on the same side. We all want what's best for not just this person but all people in this situation. This man got an excellent hearing. The testimony of the doctors was extremely good. No, I think everybody agrees with that. I think the issue is whether or not the findings were recorded in a way that would suspend you. Well, I think that's why the forfeiture argument in this case is extremely important. Judge Wexton, Justice Chatelain, you both said, why not have a proposed finding? Why not have a checklist? And I think we're moving in that direction. I think there's some good steps being done. We're making progress. Yes. But in this case, all of the evidence was presented, and the only thing that can be complained of is that the evidence was not described in sufficient detail. This is something that could have been corrected so easily. Really. That's the point that we've been trying to make now for years. Right. And In Re Sharon L.N., that's cited in the state's brief, says, procedural deviations from the code do not warrant reversal of an involuntary commitment order if the defects could and should have been objected to immediately, could have been easily cured if immediately objected to, and made no difference anyway. That's this case. Now, counsel from the committee has said, well, he's pro se. Well, he chose to be pro se, and he was found capable of doing that, and I think the record represents that he knew the procedure. It's very clear that he knew the procedure. Does that fly in the face of, you know, some of the, I guess, statements that he thought he was Jesus Christ? I mean, obviously he does not appear to be a competent person, and you're saying that he was competent, though. Well, I'm saying that I operate at somewhat of a disadvantage in this case since I didn't do the initial briefing, and I'm not even sure it is contained in the record, but presumably the trial court found this man capable of representing himself. He wouldn't have been allowed to proceed pro se if he did not, and I think that there's a difference between believing you're an NBA basketball star and understanding the procedure that goes on in a mental health committee commitment, and I think that the record does show that he did understand that procedure, and he did understand what had to be done and what didn't have to be done, and this could have been corrected very, very quickly. Moreover, as again is pointed out in the state's brief, there is no harm to this defendant. He's not a defendant. This respondent. He was able to raise every issue that he wanted to raise despite the findings in the trial court. Moreover, I point to Justice Wexton, your comment that the trial court's order did say that he found the mental illness and he did say that I'm going to find that the burden of proof has been met, that there is a mental illness, and the factors are met pursuant to the statute. Now, in this case, there is no response that says, well, we don't know which one. Well, we do know which one, all three. We have a finding here that says, question, as a result of the patient's mental illness, is he a person who is reasonably expected, unless treated on an inpatient basis, to engage in conduct placing him or another in physical harm or in reasonable expectation of being physically harmed? Answer from the expert witness. Question, as a result of the patient's mental illness, is he a person who is unable to provide for his basic needs so as to guard himself from serious harm without the assistance of family or others unless treated on an inpatient basis? Answer, yes, he is. Question, as a result of the patient's mental illness, is he a person who is unable to provide for his basic needs so as to guard himself from serious harm without the assistance of family or unless treated on an inpatient basis? Answer, yes, he is. So the trial court's order, which says that there is a mental illness and the factors are met, clearly means all three of the factors are met. As I said, this is not a case where there wasn't sufficient evidence there. Respondent calls this court's attention to James S. I point to language in James S that says that part of the reason that decision was reached was because the court said that it was particularly problematic because the evidence does not reveal what provision authorized involuntary. That was an involuntary administration. It says the evidence didn't reveal it. Well, the evidence here does. And I agree. So are you saying that if we can glean it from the record, there is no requirement that the order itself state what the findings of fact and conclusions of law were? I don't like the word glean because to me that says something. Well, we have to go to the record and find it. I think given when you take the forfeiture and the fact that it's so clear. Let's forget about the forfeiture. Okay. Yes, I think that given, though, longer than these records are, given that when a court chooses to overlook forfeiture, then the analysis would be akin to a plain error analysis, and you look to see if there was any prejudice to the defendant. I'm sorry, too many premises. That's okay. And there was not here. He got a very good hearing and one of the best that I've seen, really. And there really can be no doubt that all three of the reasons for commitment were met here. And, again, there is no requirement that these findings be detailed. If the trial court says there is a mental illness and it's so easy to see that there is a mental illness, and if the trial court says the factors are met and it's so easy to see that all three factors are met and that it's the least restrictive services and it's so easy to see that the least restrictive services are there, then certainly it cannot be said under anything resembling a plain error analysis that there was any prejudice to the defendant. And I think that's where we have to go. As far as the second issue on the psychotropic medicine, again, there was really good evidence that this respondent was informed in writing of the side effects, the risks, and the benefits of the proposed treatment. The only question we're dealing with here is viable alternatives. Dr. Diana Tracy, who is the medical director at Choate Mental Health, testified at the hearing on the petition for administration of psychotropic medication. And her testimony very clearly establishes that just what Justice Chapman, you were asking about, there were no viable alternative treatment options. And how do you advise? There are supposed to be alternatives to proposed treatment. If there are no alternatives to proposed treatment, then to require someone to testify that to, as Justice Chapman, you put, is ludicrous. It's very clear that there were no alternatives to proposed treatment. There was a clear discussion of the drugs, their benefits, how they affect him, what else could be done. I would ask this Court not to impose yet another requirement on these doctors to testify to nonexistent things. If there are no alternative treatments, then you can't testify. And if there are no other questions. Thank you, Ms. Schantz. Ms. Smith, do we have rebuttal? I think that if we don't require trial courts to make findings of fact, what's going to happen is that the legislature's use of the word shall in 3-816 will just be eroded away. I think that the legislature has previously determined that this is something that needs to be complied with, or else it would say may, or something else along those lines. But the word shall, I believe we need to adhere to that. We're dealing with constitutional, fundamental rights not to be subject to involuntary admission in this particular case. And I think that we need to strictly construe all the statutes that uphold those rights. And the only way that we can do that is by requiring specific findings of fact. And secondly, as to the medication portion of this appeal, I think that if we go with what the state wants us to do, it will just turn into a claim in pretty much every case that there are no alternatives, and that's why we didn't advise the respondent of any alternatives. So I can just see an erosion taking away of these statutory rights that are in place to protect the due process rights of respondents in involuntary admission and involuntary medication cases. And I would ask respectfully that this court reverse both orders in this case. And thank you very much. Thank you, Ms. Manningham.